UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RIVERDALE PLATING & HEAT TREATING, LLC, an Illinois limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> ANDRE CORPORATION, an Indiana corporation, and DAVID ANDRE, <br><br> Defendants. | 15 C 3255 <br><br> Judge Feinerman |

**MEMORANDUM OPINION AND ORDER**

Riverdale Plating & Heat Treating, LLC, brought this suit against Andre Corporation ("AC") and David Andre ("Andre") in state court, claiming breach of contract, account stated, and unjust enrichment in connection with AC's alleged failure to pay for roughly $154,000 worth of Riverdale's services. Doc. 2-1. Defendants removed the suit to federal court under the diversity jurisdiction, Doc. 2, which was proper because Riverdale is a limited liability company whose members are all Illinois citizens, *see Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 267 (7th Cir. 2006), and Andre and AC are Indiana citizens, Doc. 10 at ¶¶ 3-5. Defendants have moved to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Doc. 16. The motion is granted as to Andre and denied as to AC.

"A federal district court sitting in diversity must apply the personal jurisdiction rules of the state in which it sits." *Kipp v. Ski Enter. Corp.*, 783 F.3d 695, 697 (7th Cir. 2015). The Illinois long-arm statute permits a court to exercise personal jurisdiction "on any … basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2–209(c). Because "there is no operative difference between these two constitutional

1

limits," a federal court sitting in Illinois and evaluating a Rule 12(b)(2) motion asks "whether the exercise of personal jurisdiction would violate federal due process." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (citations omitted); *see also Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) (holding that the court must "ask whether the exercise of jurisdiction comports with the limits imposed by federal due process") (internal quotation marks omitted); *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) ("[T]he statutory question merges with the constitutional one—if Illinois constitutionally may exercise personal jurisdiction over a defendant, its long-arm statute will enable it to do so."). "The plaintiff bears the burden of establishing personal jurisdiction when the defendant challenges it. Where, as here, the district court rules on a defendant's motion to dismiss based on the submission of written materials without holding an evidentiary hearing, the plaintiff need only make out a *prima facie* case of personal jurisdiction." *N. Grain Mktg.*, 743 F.3d at 491 (internal quotation marks and citation omitted).

"Under the Supreme Court's well-established interpretation of the Fourteenth Amendment's due process clause, a defendant is subject to personal jurisdiction in a particular state only if the defendant had certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Mobile Anesthesiologists*, 623 F.3d at 443 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted); *see also Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). The Supreme Court has "framed the constitutional inquiry in terms of whether the defendant purposefully avails itself of the benefits and protections of conducting activities in the forum state." *Mobile Anesthesiologists*, 623 F.3d at 444 (internal quotation marks omitted). To

be subject to personal jurisdiction, "[t]he defendant's contacts must not be merely random, fortuitous, or attenuated; rather, the 'defendant's conduct and connection with the forum state' must be such that it should 'reasonably anticipate being haled into court there.'" *Citadel Grp. Ltd. v. Wash. Reg. Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)); *see also Walden*, 134 S. Ct. at 1123.

"Personal jurisdiction can be general or specific, depending on the extent of the defendant's contacts." *Mobile Anesthesiologists*, 623 F.3d at 444; *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 754-55 (2014). Riverdale pursues only a specific jurisdiction theory, Doc. 28 at 5, and therefore has forfeited any argument that general jurisdiction lies over Defendants. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997) ("RAR has never alleged that Turner has such systematic contacts with Illinois. RAR has thus waived any general jurisdiction argument, and we may focus exclusively on specific jurisdiction.") (citation omitted). "Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities. The exercise of specific jurisdiction must also comport with traditional notions of fair play and substantial justice." *N. Grain Mktg.*, 743 F.3d at 492 (internal quotation marks and citations omitted); *see also Advanced Tactical Ordnance Sys.*, 751 F.3d at 802-03. Accordingly, when assessing specific personal jurisdiction, the "relevant contacts" are "defendant's *suit-related* conduct," which "must create a substantial connection with the forum State." *Advanced Tactical Ordnance Sys.*, 751 F.3d at 801 (quoting *Walden*, 134 S. Ct. at 1121) (internal quotation marks omitted). "The mere fact that [the defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction.

3

Furthermore, the relation between the defendant and the forum must arise out of contacts that the defendant *himself* creates with the forum." *Ibid*. (internal quotation marks and citations omitted, alteration in original). In other words, "the plaintiff cannot be the only link between the defendant and the forum." *Id*. at 802 (quoting *Walden*, 134 S. Ct. at 1122).

AC manufactures metal washers in Elkhart, Indiana. Doc. 2-1 at ¶ 7; Doc. 31 at 1. Riverdale treats and plates metal products in Riverdale, Illinois. Doc. 2-1 at ¶¶ 1, 6. For more than three years, AC retained Riverdale to treat its washers. Doc. 17 at 38; Doc. 28-1 at ¶ 5. According to the affidavit of Lisa McKinstry, Riverdale's Office and Accounting Manager, AC and Riverdale generally negotiated "pricing, delivery terms, [and] availability" by phone, email, or fax, and then AC would send Riverdale an email or fax to place an order. Doc. 28-1 at ¶¶ 8, 16-17. Typically, once an order was placed, Riverdale's drivers would haul the washers from Indiana to Illinois, Riverdale would treat them in Illinois, and Riverdale's drivers would haul the finished washers back to AC's Indiana headquarters. *Id*. at ¶¶ 8-10, 12; Doc. 28-2 at 5. However, AC's drivers moved the washers between the two facilities "on several occasions." Doc. 28-1 at ¶¶ 11-15; Docs. 28-3, 28-4, 28-5 (email chains in which AC employees arrange for AC drivers to pick up loads of washers from Riverdale in Illinois). AC generally paid Riverdale by mailing it a check. Doc. 28-1 at ¶ 19; Doc. 28-2 at 5. Riverdale provided services for AC roughly once per week during the course of their relationship. Doc. 28-1 at ¶¶ 6-7.

Defendants do not dispute McKinstry's assertions, although their reply brief characterizes the AC drivers who entered Illinois to pick up or deliver washers as employees of "third-party trucking services." Doc. 31 at 1, 17. Andre submitted two affidavits averring that Gregory Lucchese, AC's Purchasing Agent, handled most of AC's interactions with Riverdale, and that Andre and Riverdale rarely communicated. Doc. 17 at 38; *see also* Doc. 28-2 at 5, 7; Doc. 28-6

4

at 4. Andre's affidavit also states that AC and Riverdale first made contact when Riverdale salespeople visited AC's plant in Indiana, Doc. 17 at 38, and that AC did not inspect Riverdale's facilities before the two companies began doing business. *Ibid*.

The court has specific personal jurisdiction over AC because it purposefully and repeatedly availed itself of the benefit of conducting business in Illinois. Every week for three years, it would call, fax, or email Riverdale in Illinois to place an order for metal finishing after negotiating pricing and delivery terms. *See Felland v. Clifton*, 682 F.3d 665, 675-76 (7th Cir. 2012) (treating phone calls to the plaintiff in the forum State as relevant contacts with the State); *O'Hare Int'l Bank v. Hampton*, 437 F.2d 1173, 1176-77 (7th Cir. 1971) (same). Then AC would allow Riverdale to take its washers into Illinois and treat them there. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 785 (7th Cir. 2003) (treating as a significant contact the fact that the defendant sent medical samples to the forum State for the plaintiff to analyze); *Daniel J. Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213, 1219 (7th Cir. 1990) ("Although not dispositive, the fact that a plaintiff performs a substantial amount of a contract in the forum state constitutes another meaningful contact between the defendant and the forum."). And except for a few weeks in which AC handed the check directly to the delivery driver, Doc. 31 at 17, and a few months in which AC allegedly did not pay at all, AC would finish the transactions by sending checks to Riverdale's Illinois headquarters. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480 (1985) (treating as a significant contact the fact that the contract required the defendants to pay the plaintiff in the forum State); *O'Hare Int'l Bank*, 437 F.2d at 1177 (same). These circumstances show that AC did business in Illinois, on purpose, and that its dealings in the State were regular and substantial rather than "random, fortuitous, or attenuated."

*Burger King*, 471 U.S. at 475 (internal quotation marks omitted). Because this suit arises from those dealings, the court has specific personal jurisdiction over AC.

AC argues that Riverdale initiated the relationship between the two companies by sending salespeople to AC's plant in Indiana. Doc. 17 at 10. It is true that in a breach-of-contract suit, whether the plaintiff or the defendant initiated the transaction is relevant to whether the defendant purposefully availed itself of the plaintiff's home forum. *See Philos Techs., Inc. v. Philos & D, Inc.*, __ F.3d __, 2015 WL 5562178, at *7 (7th Cir. Sept. 22, 2015). But while Riverdale's sales force reached out to AC first, AC initiated the hundreds of transactions that followed when it transmitted weekly purchase orders with negotiated terms to Riverdale in Illinois. Traditional notions of fair play and substantial justice do not require courts to give dispositive effect to the parties' first interaction while ignoring their second through hundred-and-second. *See Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 758 (7th Cir. 2010) (explaining that it was "misleading" to characterize sales by an internet company as "unilateral" in light of "several of [the company's] own actions that led up to and followed the sales"); *Daniel J. Hartwig Assocs.*, 913 F.2d at 1218 (noting that "[t]wo significant factors" supporting the court's holding that the defendant had sufficient contacts with the forum were that he solicited the plaintiff's services and that he did so "on a number of occasions, thus creating a continuing relationship between himself and a resident of the forum state"); *Madison Consulting Grp. v. South Carolina*, 752 F.2d 1193, 1203 (7th Cir. 1985) ("[W]hen a defendant is responsible for initiating several significant links with the forum plaintiff leading to the transaction at issue, this is sufficient to satisfy the Fourteenth Amendment.").

AC also points out that its employees never physically entered Illinois to conduct business; Andre avers that the drivers that AC hired to pick up washers in Illinois were

6

independent contractors, a fact that Riverdale does not dispute. But *Burger King* establishes that physical presence is not necessary for personal jurisdiction; it held that defendants who never had traveled to Florida were nonetheless subject to suit there. 471 U.S. at 476 ("Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State."). More generally, *Burger King* emphasized that it is inappropriate to strap the personal jurisdiction determination into "mechanical tests" or "conceptualistic … theories of the place of contracting or of performance." *Id*. at 478 (internal quotation marks and citation omitted). District courts ruling on Rule 12(b)(2) motions instead must perform a flexible, all-things-considered inquiry into whether the defendant has "purposefully avail[ed]" itself of the forum State's laws such that it would be "fair" to subject it to suit there. *Id*. at 475-76.

This case illustrates why. AC may never have sent its *employees* to Illinois, but it did send emails and faxes to Illinois ordering service; it placed phone calls to Illinois negotiating the terms of the service; it allowed hundreds of thousands of dollars' worth of its washers to be taken into and treated in Illinois; it on occasion directed truck drivers—contractors though they were—to pick the washers up in Illinois; it sent checks to Illinois; and it engaged in these transactions hundreds of times over three years. AC has sufficient suit-related contacts with Illinois for this court to exercise jurisdiction over it, even if its employees never strayed west of Gary.

This result is consistent with *Philos Technologies*. In that case, an Illinois corporation sued several Korean individuals and businesses in federal court in Illinois. The Seventh Circuit held that the district court lacked personal jurisdiction over the defendants even though one of them had conducted some business with the plaintiff while visiting Illinois and all of them had contracted with the plaintiff to ship equipment from Illinois to Korea. The holding turned on the fact that the contract giving rise to the suit was a one-off—it "was neither highly structured nor

7

long-lasting; instead, it was in essence a contract for the provision of goods to a Korean company." 2015 WL 5562178, at *10. The facts here are materially different. AC's transactions with Riverdale were not isolated; rather, they were "continuing and wide-reaching," occurring week in and week out for over three years. *Burger King*, 471 U.S. at 480. That one of the defendants in *Philos Technologies*, unlike AC, physically traveled to Illinois only reinforces that an out-of-state defendant's fleeting physical presence in the forum is not dispositive to the personal jurisdiction analysis.

For these reasons, the court has personal jurisdiction over AC. Andre presents a different story. Andre contends that Lucchese handled AC's relationship with Riverdale and that Andre spoke with Riverdale on only a few occasions. Doc. 17 at 38. Riverdale does not disagree, but points out that Andre is AC's president and sole shareholder. Doc. 2-1 at ¶ 52; Doc. 28 at 13. That is not enough to subject Andre to personal jurisdiction in Illinois, as shareholders do not inherit a corporation's contacts with a State. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2857 (2011) (noting that "merging parent and subsidiary for jurisdictional purposes requires an inquiry comparable to the corporate law question of piercing the corporate veil") (internal quotation marks omitted); *KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 733-34 (7th Cir. 2013) (refusing to saddle a parent corporation with the subsidiary's contacts with the forum State, given that there was no basis for piercing the corporate veil).

Riverdale's only argument that Andre has sufficient *personal* contacts with Illinois for personal jurisdiction purposes is that Andre operates AC as an alter ego—a sham designed only to shield him from personal liability. Doc. 28 at 13. Courts do impute a shell corporation's contacts with a State to a shareholder who exercises "an abnormal level of involvement or

8

control" over the corporation's affairs. *See KM Enters.*, 725 F.3d at 733-34; *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 541 (7th Cir. 1998). But Riverdale has not provided any *evidence* that Andre has exercised that kind of control over AC. Although factual disputes are resolved in the plaintiff's favor on a Rule 12(b)(2) motion, "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found.*, 338 F.3d at 783 (footnote omitted).

Andre submitted affidavits opposing jurisdiction, which aver that he "was not involved in purchasing for AC"; that he did not "personally handle Riverdale's account with AC" or "place purchase orders with Riverdale for AC"; and that he was only a 50 percent shareholder of AC during the events giving rise to the suit. Doc. 17 at 38; Doc. 31-1 at 7. And Andre's responses to Riverdale's interrogatories aver that he "was not responsible for managing daily operations at AC." Doc. 28-6 at 5. Given Andre's affidavits and interrogatory responses, Riverdale can no longer rest on "bare allegations" to establish Andre's alleged control over AC. *Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013); *see also Second Amendment Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) ("[T]he bare allegation of conspiracy or agency is insufficient to establish personal jurisdiction") (internal quotation marks omitted); *cf. de la Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681, 685 (7th Cir. 2008) ("A nonmoving party cannot defeat a motion for summary judgment with bare allegations."). But bare allegations are all Riverdale has; its brief opposing the Rule 12(b)(2) motion simply repeats that AC was a shell and cites its complaint. Doc. 28 at 13. Riverdale therefore has not made even a *prima facie* case for jurisdiction over Andre. This disposition renders it unnecessary to consider

Andre's argument that the fiduciary shield doctrine relieves him from what otherwise would be the jurisdictional consequences of his alleged Illinois-related conduct on AC's behalf.

Accordingly, Defendants' Rule 12(b)(2) motion is denied as to Andre Corporation and granted as to David Andre. Because no material facts are in dispute, no evidentiary hearing is necessary. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). The claims against David Andre are dismissed without prejudice. *See Sikhs for Justice v. Badal*, 736 F.3d 743, 751 (7th Cir. 2013) ("Ordinarily a dismissal for want of personal jurisdiction as a result of improper service is without prejudice, leaving the plaintiff free to refile the suit and seek to serve the refiled complaint on the defendant."). AC shall answer the complaint by October 23, 2015.

October 9, 2015

United States District Judge